## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| TERRY LEE ACKLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 4:14-cv-02457-JHE |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Terry Lee Ackles ("Ackles") seeks review, pursuant to 42 U.S.C. § 405(g), §
205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security
Administration ("Commissioner"), denying his application for period of disability, Disability
Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Ackles timely pursued
and exhausted his administrative remedies. This case is therefore ripe for review under 42
U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the
reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Ackles was a fifty-four-year-old male at the time of the Administrative Law Judge's
("ALJ") decision. (Tr. 96-97). He completed high school, (tr. 96 & 213), and worked as a
grinder, hand packer, overhead crane operator, saw operator, tongue and groove machine
operator, and as a poultry hanger, (tr. 95).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

Ackles filed his application for a period of disability, DIB, and SSI on July 20, 2011. (Tr. 86). The Commissioner initially denied his application, (tr. 123-24), and Ackles requested a hearing before an ALJ on November 8, 2011, (tr. 125-26). After a hearing, the ALJ denied his claim on June 21, 2013. (Tr. 97). Ackles sought review by the Appeals Council, (tr. 80-82), but it declined his request on October 20, 2014, (tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On December 22, 2014, Ackles initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. It is "more than a scintilla, but less than a preponderance." *Id*.

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)    whether the claimant can perform his or her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Ackles met the insured status requirements of the Social Security Act through December 31, 2015, and did not engage in substantial gainful activity from the alleged onset date of May 1, 2011. (Tr. 88). At Step Two, the ALJ found Ackles has the following severe impairments: chronic obstructive pulmonary disease ("COPD"), lumbar strain, and obesity. (*Id.*). At Step Three, the ALJ found Ackles does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 89).

Before proceeding to Step Four, the ALJ determined Ackles's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Ackles has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with specified limitations. (Tr. 91). Specifically, he can

> lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk in
> combination for up to six hours in an eight-hour day, sit for up to six hours in an

eight-hour day, and push and pull with the upper and lower extremities.  He can occasionally climb ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl.   He can frequently climb ramps or stairs.   The claimant has no manipulative, visual, or communicative limitations but should avoid all exposure to work hazards and should avoid concentrated exposure to temparture extremes and fumes, odors, dusts, gases, poor ventilation, etc.  The claimant would need to use an inhaler for several minutes intermittently during the workday but would not need to leave the work facility for this purpose.

(*Id.*).

At Step Four, the ALJ determined Ackles is unable to perform any past relevant work. (Tr. 95).  At Step Five, the ALJ determined, based on his age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Ackles could perform.  (Tr. 96). Therefore, the ALJ determined Ackles has not been under a disability, as defined by the Social Security Act, from May 1, 2011, through the date of the ALJ's decision, and denied his claim. (Tr. 97).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).  The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]."  *Id.* (citation omitted).

Ackles contends generally the ALJ's decision should be reversed and remanded because the ALJ improperly evaluated the credibility of his testimony of disabling symptoms under the Eleventh Circuit Pain Standard.   The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own

testimony of pain or other subjective symptoms.  The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability.  *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain.  *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990).  The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62.  An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence.  *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (11th Cir. 2009).

When evaluating the credibility of a plaintiff's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all available subjective and objective evidence.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p.  This may include the nature of a plaintiff's symptoms, the effectiveness of medication, his method of treatment, his activities, and any conflicts between a plaintiff's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(3) & (4), 416.929(c)(3) & (4).  In articulating reasons for discrediting subjective testimony, an ALJ need not refer to every piece of evidence in the record as long as the decision is not a broad rejection which leaves a district or appellate court unable to conclude that the medical condition was considered as a whole.  *Petteway*, 353 Fed. App'x. at 288.

Here, the ALJ concluded Ackles's medically determinable impairments could reasonably

be expected to cause some of the alleged symptoms, but "[Ackles]'s statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." (Tr. 93). Ackles alleges three errors in assessing his credibility. First, he asserts the ALJ failed to properly consider the longitudinal history of pain in the record. (Doc. 12 at 4-6). Second, Ackles argues the ALJ improperly drew inferences from Ackles's failure to seek medical treatment without considering the evidence he could not afford specialized care. (*Id.* at 6-7). Third, Ackles contends the ALJ did not properly consider the combined effects of his multiple impairments. (*Id.* at 7-8).

## A. Longitudinal History

Ackles's first argument is the ALJ "failed to properly consider the medical records which reveal [Ackles]'s longitudinal history for back pain and shortness of breath and treatment for the same." (Doc. 12 at 4). In support of this argument, he notes the medical evidence documenting the presence of severe impairments, including a chest x-ray from April 2010 showing COPD, another from June 2010 showing bilateral interstitial fibrosis, a lumbar spine x-ray showing mild multi-level degenerative changes, and medical records showing continuous treatment for COPD and lower back pain. (Doc. 12 at 5) (citing tr. 290, 313-47, & 380-92). He also points to a consultative examination by Dr. Shabrez Tariq from September 24, 2011, which documents Ackles's reports of pain and Dr. Tariq's observations of mild paravertebral muscle spasms with a potential diagnosis of lumbodorsal spondylosis with bilateral L4-L5 moderate tenderness along the facet line. (*Id.*) (citing tr. 300-303). Lastly, Ackles states "[t]here is no indication that any of [Ackles]'s treating physicians did not believe he suffered from back pain and shortness of breath" but, "[t]o the contrary, [they] continually prescribed medication to help alleviate those symptoms." (*Id.* at 5-6) (citing tr. 314, 319, 323, 327, 332, & 336).

First, the arguments there is evidence to support the existence of medical impairments and that Ackles's treating physicians acknowledged his pain and treated him for it misses the point. The ALJ explicitly considers all of the evidence to which Ackles cites, (tr. 93-94); acknowledges the existence of COPD and lower back strain, (tr. 88); and attempts to account for the COPD and lower back pain in his RFC, (tr. 95). The question is not whether these impairments exist but whether they are as bad as Ackles claims they are (*i.e.*, disabling). The problem for Ackles is none of the evidence to which he points is descriptive of the level of pain or its effect on his ability to work. While the presence of a longitudinal history of treatment "lends support" to his allegations for credibility purposes, it is just part of the ALJ's review of the entire record and is not conclusive proof of the truth of Ackles's allegations. *See Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, S.S.R. 96-7P (S.S.A. July 2, 1996).

Although the medical records show Ackles was consistently prescribed a muscle relaxer and a narcotic-like pain medication, (tr. 313-32), the medication was not changed or increased from the time Ackles first complained of back pain in the records through the most recent records (February 2012 to May 2013), (*id.*); during that time, Ackles often claimed pain of zero out of ten, (tr. 322, 326, 341, 345, & 391); his physicians did not suggest to him any other modes of treatment, (tr. 107); and there is evidence from September 2011 that medication had previously been effective at controlling his pain, (tr. 300). The ALJ concluded this evidence showed routine and conservative treatment of intermittent symptoms. (Tr. 95). In his opinion, the ALJ also considered Ackles's "vague and unpersuasive" testimony at the hearing, that Ackles had not originally asserted his back pain as disabling in his Disability Report, and that there were no medical opinions indicating disability or limitations greater than the ALJ had determined.

(Tr. 92 & 95). (There was, however, a functional capacity assessment completed in October 3, 2011, upon which the ALJ's RFC was based. (Tr. 95 & 304-11).) Based on this lack of "medical treatment one would expect for a totally disabled individual," Ackles's "unpersuasive" testimony, and the consultative medical opinion finding no disability, the ALJ found the evidence did not support the inference of disabling pain. (Tr. 95). There is substantial evidence to support the ALJ's finding Ackles's description of his pain as disabling is not credible.

## B. Inferences from Lack of Treatment

Because of the ALJ's conclusion regarding the lack of expected medical treatment, Ackles's second argument is the ALJ erred by making that inference without first considering other explanations for it, specifically, evidence in the record indicating Ackles could not afford other care. (Doc. 12 at 6). Ackles cites evidence he lives in low-income housing, receives food stamps, was supposed to have an additional exam but did not have the insurance for it, and a medical record showing he was referred to a doctor but did not have the resources to go. (Doc. 12 at 6) (citing tr. 105-07 & 385).[4]

Under S.S.R. 96-7P, the credibility of an individual's statements may be undermined "if the level or frequency of treatment is inconsistent with the level of complaints"; however, "[w]hen the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, [the] court will remand for further consideration." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015). In *Henry*, the Eleventh Circuit acknowledged the claimant's statement he was unable to pay for

---

[4] Both the unpursued specialist referral and the exam for which Ackles did not have insurance appear to have been for conditions unrelated to his back pain. (*See* tr. 107 ("[T]hey're supposed to stuck a light up in me, but I didn't have the insurance to do it with.") & 385 (discussing, under a section titled "abdominal pain," Ackles's lack of resources to follow up with a specialist)).

continued medical treatment and reversed, finding "the ALJ failed to consider any good cause explanations for failure to seek medical treatment" because "the ALJ neither developed the record nor addressed Henry's financial ability to pursue a more rigorous course of treatment." *Id*.

In the instant case, however, the ALJ not only explicitly noted Ackles's statements in September 2011 that his medications relieved his pain, (tr. 94) (citing tr. 300), but he also expanded the record at the hearing by asking Ackles whether his doctors had recommended any additional treatments beyond medication, (tr. 107). It is unknown whether the ALJ would have gone on to ask if Ackles did not pursue further treatments due to his poverty, because Ackles's answer to the first question was negative, (tr. 107) ("No, sir.  They just give me the medication."). With positive evidence the medications relieved Ackles's pain, direct testimony from Ackles his doctors had not recommended further treatment, and consultative medical opinions showing no disability, the ALJ was not primarily relying on a negative inference from Ackles's medical history. However, even if he were, he cannot be faulted for doing so because, while there was evidence of Ackles's poverty, there was also substantial evidence in the record poverty was not the reason greater measures were not taken for his pain.

### C.  Combined Effects

Lastly, Ackles contends the ALJ did not consider all of his multiple impairments together. (Doc. 12 at 7). He points to the evidence showing lumbar degeneration, shortness of breath, and back pain and the subsequent treatment of those conditions as evidence he could only do sedentary work. (*Id*. at 7-8). Other than these contrary conclusions from the evidence, Ackles points to nothing to indicate the ALJ did not consider the impairments in combination. Not only does the ALJ state he considered the impairments in combination, (tr. 89), specifically

regarding the compounding effects of obesity, which he found to be negligible, (tr. 91 & 94), but he addressed the other impairments together and relied on a consultative physician's overall conclusions when crafting limitations for the RFC, (tr. 95).  The fact the ALJ came to a different conclusion about the combined severity of the impairments does not mean he did not consider them in combination.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Ackles's claim for a period of disability, DIB, and SSI is **AFFIRMED** and this action is **DISMISSED WITH PREJUDICE**.

DONE this 30th day of March 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE